IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CV-403-FL

| | | |
|---|---|---|
| SMD SOFTWARE, INC. and SITELINK SOFTWARE, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| EMOVE, INC., et al., | ) ) | |
| Defendants. | ) | |

This case comes before the court on the motion (D.E. 31) of plaintiffs SMD Software, Inc. and Sitelink Software, LLC (collectively "plaintiffs") to compel production of documents.[1] Plaintiffs filed a memorandum with exhibits in support of their motion. (D.E. 32). Defendant EMove, Inc. ("EMove") filed a response in opposition. (D.E. 37). For the reasons and on the terms set forth below, plaintiffs' motion will be allowed in part and denied in part.

## BACKGROUND

According to the second amended complaint, plaintiffs are in the business of developing and marketing SiteLink and SiteLink Web Edition, management software for the self-storage industry. (2nd Am. Compl. (D.E. 7) ¶ 6). EMove is a competitor of plaintiffs as the developer of a management software system marketed to independent owners of self-storage units. (Id. ¶ 12). Plaintiffs allege that EMove distributed printed materials to promote its software that included a

---

[1] Plaintiffs included over six pages of supporting information in the motion. Their supporting memorandum totaled nine pages. Thus, plaintiffs filed about 15 pages of briefing in support of their motion. The lengthy motion had the effect of circumventing the ten-page limit on memoranda supporting discovery motions under Local Civil Rule 7.1(e), E.D.N.C. Plaintiffs' unorthodox placement of all authorities in footnotes was of like effect. In its discretion, the court has considered plaintiffs' submissions notwithstanding their length. No party should, however, expect the court to tolerate practices circumventing the Local Rules. They can result in summary denial of any motion involved, possibly with prejudice, and the imposition of other sanctions.

table comparing it to plaintiffs' SiteLink software. (*Id.* ¶¶ 14-15). Plaintiffs further allege that the promotional materials contain numerous misrepresentations and have caused plaintiffs to lose business. (*Id.* ¶¶ 16, 18). Plaintiffs' second amended complaint asserts four causes of action: (1) defamation (*id.* ¶¶ 20-23); (2) unfair and deceptive trade practices (*id.* ¶¶ 24-28); (3) tortious product disparagement (*id.* ¶¶ 29-32); and (4) false advertising in violation of the Lanham Act (*id.* ¶¶ 33-37). It seeks preliminary and permanent injunctive relief (*id.* ¶¶ 38-42) as well as compensatory damages, fees, and costs (*id.* Prayer for Relief). EMove denies any wrongdoing. (*See generally* Def's. Ans. (D.E.13)). On 26 May 2010, with leave of court (*see* D.E. 42), plaintiffs filed a third amended complaint (D.E. 44)[2] adding several defendants, but not otherwise making substantive changes in the second amended complaint.

On 28 March 2009, plaintiffs served their second request for production of documents, and on 26 May 2009 EMove served its responses (D.E. 32-2).[3] By the instant motion, plaintiffs move to compel more complete responses to two groups of requests. One, requests no. 1, 2, 9-13, seeks a broad range of financial documents for EMove, including EMove's tax returns. The other, requests no. 4 and 15, seek customer information for EMove. EMove has produced documents in response to both groups of requests. Plaintiffs contend and EMove denies that the production is incomplete. Plaintiffs brought their motion after extended discussion between counsel, as reflected in the substantial amount of email and other correspondence submitted by the parties in support of their respective positions on the motion. (*See* D.E. 32-3 to -8, 37-2).

---

[2] This pleading is erroneously denominated as the "Second Amended Complaint."

[3] EMove's response was accompanied by the requests for production and is the most readily accessible source in the record for the requests. Plaintiffs did not submit the instructions or any specialized definitions included in their requests for production. The language used in the production requests shall therefore be deemed to have its ordinary meaning for purposes of this Order.

2

## I.   APPLICABLE STANDARDS

### A.   General Standards

Rule 26 of the Federal Rules of Civil Procedure allows for a broad scope of discovery. It provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). For good cause, discovery may also be had of any matter relevant to the subject matter involved in the action. *Id.* Moreover, "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The courts have held that the rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. 27 Sep. 2000).

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'" *Equal Employment Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. 13 June 2007) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)); *see also* Fed. R. Evid. 401. The district court has broad discretion in the determination of relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992).

### B.   Standards for Tax Returns

Federal case law recognizes a qualified privilege limiting the disclosure of tax returns. *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, No. 1:02CV000146, 2004 WL 444570, at *2

3

(M.D.N.C. 24 Feb. 2004). Under this standard, tax returns are discoverable if they are relevant and the information is not available from other sources. *Id.* The requesting party bears the burden of showing relevance and the resisting party the burden of showing availability from other sources. *Id.*

Tax returns may generally be discovered for purposes of supporting a punitive damages claim only where the plaintiff has made a prima facie showing of entitlement to them. *Hester v. Cottrell Contracting Corp.*, No. 7:00-CV-70-BR, 2001 WL 1764200, at *4 (E.D.N.C. 27 Apr. 2001) ("Because [plaintiff] has made such a [prima facie] showing and because a defendant's financial condition has some bearing on the determination of punitive damages, [defendant's] financial information is discoverable; however, the court will limit the disclosure to [defendant's] current financial condition."); *see also E.E.O.C. v. Maha Prabhu, Inc.*, 3:07-CV-111-RJC-DCK, 2008 WL 4126681, at *4 (W.D.N.C. 18 July 2008) ( holding that tax returns are relevant to punitive damages claim only after plaintiff makes a prima facie showing that it is entitled to punitive damages) (citing *Water Out Drying Corp. v. Allen*, No. 3:05cv353-MU, 2006 WL 1642215, at *2 (W.D.N.C. 7 June 2006)). The prima facie showing can be satisfied by presenting evidence in support of the punitive damages claim or by surviving a motion to dismiss or for summary judgment. *See Hester*, 2001 WL 1764200, at *4 (evidence); *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D.N.C. 1993) (survival of dispositive motion). In either event, only tax returns for the defendant's current financial situation are discoverable. *See Hester*, 2001 WL 1764200, at *4.

4

## II. PLAINTIFFS' REQUESTS FOR FINANCIAL DOCUMENTS (REQUESTS NO. 1, 2, 9-13)

### A. Requests for Documents Other than Tax Returns

Plaintiffs' requests for financial documents cover not only financial information for EMove as a whole, but also financial information dealing specifically with sales of webselfstorage software, software and technical support services, credit card processing services, and credit card readers.[4] The period for which all the documents is requested is 1 January 1999 through the present, but because plaintiffs do not appear to contest EMove's representation that it did not begin doing business until 2003, the period effectively covered by the requests is 2003 through the present. EMove has produced various financial documents in response to these requests, namely, its income statements and balance sheets for the specified period, an income and expense report for webselfstorage for 2009, and a statement of gross revenue for the specified period. (*See* 6 Oct. 2009 Ltr. from EMove's Atty. (D.E. 32-7) 2; EMove's Mem. 3, 4-5).

Notwithstanding this production, plaintiffs appear to ask for an order compelling production of all documents sought in the requests for financial documents, including specifically EMove's tax

---

[4] More specifically, requests no. 1 and 2 together seek financial statements for EMove, including federal and state tax returns, profit and loss statements, and income statements and all other documents referring or relating to revenue by type, category, and/or customer; requests no. 9 and 10 together seek all documents referring or relating to gross and net profits on sales of webselfstorage management software and technical support, including federal and state tax returns, profit and loss statements, and income statements; request no. 11 seeks all documents referring or relating to the price of EMove's software and/or technical support services, including the price of electronic communication inquiries, the price of telephonic inquiries, and/or the price of any other communication by customers referring or relating to technical support; request no. 12 seeks all documents referring or relating to processing fees or other gross or net profits for credit card service providers including federal and state tax returns, profit and loss statements, income statements, and copies of contracts with credit card providers; request no. 13 seeks all documents referring or relating to sales of credit card readers to EMove's customers, including federal and state tax returns, profit and loss statements, income statements, and copies of contracts for or other documents referring or relating to sales of credit card readers. (*See* Def.'s Resp. no. 1, 2, 9-13).

5

returns.[5] EMove expressly objects to the request for its tax returns, but asserts no objection to the requests for the other documents and contends that the documents it has produced satisfies them. It thereby does not pursue the objections it asserted in its response to these production requests.

The court agrees that the nonprivileged (*i.e.*, not subject to the attorney-client privilege or work product doctrine) financial documents sought, other than the tax returns, are discoverable. These financial documents are manifestly relevant to plaintiffs' claims. Plaintiffs are entitled to the actual financial statements used by EMove, not summaries of that information prepared for litigation. Plaintiffs allege that EMove produced simply summaries. IT IS THEREFORE ORDERED that the portion of plaintiffs' motion seeking production of the nonprivileged documents sought in requests no. 1, 2, 9-13, other than tax returns, is ALLOWED to the extent that EMove has not already produced them.

But such production need not be made until after the parties have filed a proposed protective order on confidentiality and the court enters such an order enabling EMove to protect the confidentiality of these documents, as appropriate. Although plaintiffs represent that the parties have been operating under the terms of a "Stipulation and Protective Order" since September 2008 (Mot. 2 ¶ 4; Pls.' Mem. 2), the parties apparently have not seen fit to submit this document to the court for its review and approval. Plaintiffs acknowledge that the document is not "formally executed." (Mot. 2 ¶ 4; Pls.' Mem. 2). It therefore lacks the force of an order. The court chooses not to order EMove to produce what could be confidential information before ensuring that the means are in place for it to protect their confidentiality to the extent appropriate.

_____

[5] Plaintiffs did not provide a detailed identification of the documents they seek, other than by reference to the production requests.

IT IS THEREFORE ORDERED that within seven days after entry of this Order the parties shall file a proposed protective order on confidentiality. Within seven days after entry of a protective order on confidentiality, EMove shall produce the nonprivileged documents sought by production requests no. 1, 2, 9-13, other than tax returns, that it has not already produced.

## B.    Requests for Tax Returns

Turning now to plaintiffs' requests for tax returns, plaintiffs seek them to support their Lanham Act and punitive damages claims. EMove counters that the returns are not discoverable because it has provided the substantial equivalent of the information sought in its tax returns by its production of other financial documents. To the extent that plaintiffs seek the tax returns to support their punitive damages claim, EMove argues that plaintiffs have not made the requisite threshold showing that their punitive damages claim has merit.

The court agrees with plaintiffs that EMove has not made a showing that the information in the tax returns is available from other sources. Although EMove represents in its memorandum (without a supporting affidavit) that it gave these documents to its accountant for purposes of preparing its tax returns, neither EMove nor plaintiffs submitted any of the documents to the court to enable it to make its own determination regarding their sufficiency as an alternative to the tax returns. EMove's representation also does not exclude the possibility that it gave its accountant other documents, not produced, that were essential for preparation of its tax returns.

But, as EMove contends, plaintiffs have not made the requisite showing that their punitive damages claim is meritorious. They did not present with their motion to compel any evidence supporting their punitive damages claim. Nor has the claim survived a motion to dismiss or for summary judgment. The requests also seek returns going back effectively to the start of EMove's

7

doing business in 2003 and therefore do not appear to be limited to those bearing on EMove's current financial condition. The court therefore finds that plaintiffs have not made the requisite prima facie showing for discovery of the tax returns it seeks. Given the present absence of discoverability of the tax returns for purposes of plaintiffs' punitive damages claim, the court declines to order their production altogether at this time.

IT IS THEREFORE ORDERED that the portion of plaintiffs' motion seeking EMove's tax returns is DENIED, but without prejudice. Plaintiffs may file a renewed motion to compel EMove's tax returns for an appropriate period that is supported by evidence they contend makes a prima facie showing of their entitlement to punitive damages. Alternatively, if their punitive damages claim survives a dismissal or summary judgment motion, plaintiffs may file a renewed motion to compel production of the tax returns for an appropriate period within seven days after the order disposing of the dismissal or summary judgment motion. If no dismissal or summary judgment motion is filed by the dispositive motion deadline, plaintiffs may file within seven days after that deadline a renewed motion to compel production of the tax returns for an appropriate period. *See Blount*, 162 F.R.D. at 105 (imposing similar protocol with respect to dispositive motions for plaintiff's pursuit of production of defendants' tax returns). In no event, however, shall plaintiffs file a renewed motion to compel production of EMove's tax returns unless at or before the time of such filing a protective order on confidentiality has been proposed to or adopted by the court. Should plaintiffs renew their motion, EMove could, of course, rely on any documents produced after entry of this Order to attempt to defend against the motion.

8

## III. PLAINTIFFS' REQUESTS FOR CUSTOMER-RELATED DOCUMENTS (REQUESTS NO. 4 AND 15)

As indicated, EMove has already produced a list of its customers who were former customers of plaintiffs. By their motion, plaintiffs seek compelled production of the other such documents they requested in requests no. 4 and 15. Request no. 4 seeks all lists of EMove's current customers and documents referring or relating to total rental space per customer and/or products purchased by customer. Request no. 15 seeks all customer lists or similar documents referring or relating to the identities of customers from 1 January 1999 through the present, effectively meaning, as discussed, from EMove's commencement of business in 2003 through the present.

Plaintiffs argue that the documents sought are relevant to both its lost sales as a result of EMove's misrepresentations and EMove's profits, which can be an appropriate measure of the damages plaintiffs incurred. EMove counters that the additional customer information plaintiffs seek is not relevant. It further contends that its customer lists contain commercially sensitive and proprietary information that it should not have to disclose to a competitor.

The court agrees with plaintiffs. The additional customer lists and other customer information plaintiffs seek are, indeed, relevant to plaintiffs' claims. For example, the information sought would help plaintiffs determine what effect, if any, EMove's allegedly improper promotional materials had on EMove's customers, whether or not they were former customers of plaintiffs.

EMove's concerns about confidentiality can be addressed appropriately through a protective order on confidentiality. As previously discussed, the parties are being required to file a proposed order on confidentiality within seven days after entry of this Order.

IT IS THEREFORE ORDERED that the portion of plaintiffs' motion seeking production of the nonprivileged documents sought in requests no. 4 and 15 is ALLOWED to the extent they have not already been produced. EMove shall produce these documents within one week after entry of a protective order on confidentiality in this case.

## CONCLUSION

For the reasons and on the terms set out above, plaintiffs' motion to compel (D.E. 31) is ALLOWED in part and DENIED in part. Each side shall bear its own expenses incurred in connection with the motion. *See* Fed. R. Civ. P. 37(a)(5)(C).

SO ORDERED, this 1st day of June 2010.

James E. Gates
United States Magistrate Judge

10