| | | |
|---|---|---|
| SMD SOFTWARE, INC., a North Carolina corporation; and SITELINK SOFTWARE, LLC, a North Carolina limited liability company, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| EMOVE, INC., a Nevada corporation; U-HAUL INTERNATIONAL, INC., a Nevada corporation; WEB TEAM ASSOCIATES, a Nevada corporation; and A&M ASSOCIATES, an Arizona corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on (1) the motion for summary judgment filed by defendants U-Haul International, Inc. ("U-Haul"), Web Team Associates ("Web Team"), and A&M Associates ("A&M") (collectively, the "U-Haul defendants") (DE # 97); (2) plaintiffs' motion for additional discovery to respond to the U-Haul defendants' summary judgment motion pursuant to Rule 56(d) (DE # 108); (3) plaintiffs' motion to compel (DE # 122); and (4) plaintiffs' motion for leave to file a reply in support of their motion to compel (DE # 136). Each of these motions has been fully briefed, and the issues raised now are ripe for adjudication.

**STATEMENT OF THE CASE**

On July 14, 2008, plaintiffs initiated this action in Wake County Superior Court. On August 20, 2008, the action was removed to this court by U-Haul, at that time the only defendant.

Plaintiffs, who sell self-storage management software called "SiteLink," asserted state law claims for defamation, unfair or deceptive trade practices, and tortious product disparagement arising out of allegedly defamatory misrepresentations about plaintiffs' software in the context of advertisements for a competing software program, "WebSelfStorage."

On October 7, 2008, plaintiffs filed an amended complaint. The amended complaint named EMove, Inc. ("EMove"), a wholly-owned subsidiary of U-Haul which sells WebSelfStorage, as the sole defendant. Plaintiffs asserted violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in addition to the state law causes of action contained in their initial complaint. Two days later, plaintiffs filed a voluntary dismissal without prejudice as to U-Haul.

Approximately a year later, on October 6, 2009, plaintiffs requested leave to file another amended complaint. Plaintiffs' motion, which was opposed, was allowed by the magistrate judge on May 25, 2010. Plaintiffs filed their second amended complaint the following day, reasserting their claims against U-Haul, including now the Lanham Act claim, and also asserting those claims against Web Team and A&M, two U-Haul subsidiaries. According to plaintiffs, U-Haul owns WebSelfStorage, Web Team designed the software and provides technical support to users, and A&M produced the advertising materials at issue. All three defendants are alleged to have collaborated with their sister company EMove in the alleged defamatory advertisement.

The three U-Haul defendants filed this motion for summary judgment on March 10, 2011.[1] These defendants contend that EMove is solely responsible for the alleged misrepresentations at issue. Plaintiffs responded in opposition on April 14, 2011, arguing that the U-Haul defendants

---

[1] Although EMove is also a U-Haul subsidiary, the court refers to U-Haul and its other subsidiaries as the "U-Haul defendants" in order to distinguish them from EMove, which has not joined the instant motion for summary judgment.

participated in the torts committed by EMove, that they are liable as joint tortfeasors, and that the court should pierce the corporate veil to hold them liable. Plaintiffs also argue that the summary judgment motion comes while discovery is ongoing, and that the U-Haul defendants have wrongly withheld discovery necessary to explore the relationship among all defendants. The U-Haul defendants timely replied.

On May 3, 2011, plaintiffs filed a motion to compel defendants to provide information relating to their receipt of profits from the sale of goods and/or services other than the sale of WebSelfStorage. Plaintiffs argue that this information is relevant to the issue of damages. Defendants, including EMove, timely responded in opposition. They argue that the information is not relevant, that plaintiffs seek documents not kept in the ordinary course of business, and that it would be unduly burdensome to produce any responsive documents. On June 3, 2011, plaintiffs sought leave to file a reply to defendants' response.

On June 9, 2011, the court held hearing and pretrial status conference regarding discovery issues and all pending motions, including the ones currently before the court. As relevant here, the court inquired into whether plaintiffs' Rule 56(d) request for additional discovery was related to their motion to compel, and stated that it would take up the matters together.

## STATEMENT OF THE FACTS

A.     SiteLink and WebSelfStorage

The facts, in the light most favorable to plaintiffs, are as follows. "SiteLink" is plaintiffs' PC- and internet-based self-storage management software that allows owners and operators of self-storage facilities to manage reservations, tenant insurance, billings, etc. (Lampe Dep. 45:10-25, 69:11-70:20, 73:19-77:18.) "WebSelfStorage" is a competing software program owned by U-Haul

3

and developed by its subsidiary Web Team. (Celaya Oct. 2009 Aff. ¶ 11; Celaya Dep. 78:20-23, 80:4-5; Settles Dep. 50:25-51:3.) U-Haul's subsidiary EMove has been given the exclusive right to sell WebSelfStorage, with Web Team providing technical support for users of the software.[2] (Celaya Oct. 2009 Aff. ¶¶ 8, 11.)

In 2004, EMove created a chart comparing WebSelfStorage to SiteLink and other competitors, based on a PowerPoint presentation created by EMove's then president, Srini Vassan ("Vassan"). (Vassan Dep. 78:2-79:16; Celaya Dep. 208:25-209:10.) The brochure was given out to individuals attending trade shows. (Vassan Dep. 79:8-12, 81:23-82:7.) Neither Vassan nor Elise Sauer ("Sauer"), another EMove employee, recall who provided the information about SiteLink for purposes of the chart, although they stated that they did not compile the information themselves. (Id. at 84:7-20; Sauer Dep. 39:11-20.) Although Samuel Celaya ("Celaya"), EMove's current director, states that EMove employees researched and investigated SiteLink's features to ensure accuracy of the chart, these employees are not identified. (Celaya Oct. 2009 Aff. ¶¶ 5-6.)

In 2005, the chart was updated and redone as a brochure. (Vassan Dep. 100:4-20.) Comparisons were once again made to SiteLink, as well as additional competing service providers. (Id. at 101:8-21.) Once again, the identity of the individual supplying the comparison information about SiteLink is unknown. (Id. at 101:22-25; Fugate Dep. 78:4-21; Sauer 57:2-8.) The brochure was updated again in 2008, and this time an EMove program manager named Ozkan Kenes

---

[2] E-Move was conceived as a moving help program by a former U-Haul storage operations manager in or around 2001. (Vassan Dep. 32:2-6.) It was launched in Fall 2002 as a website allowing individuals to employ local laborers to help those individuals load their belongings into a truck or trailer and/or to unload those belongings at a storage facility. (Id. at 57:4-12.) In 2003, the EMove "program" or "brand" began offering bundled services, including a "storage affiliate program" for independent self-storage facilities. (Id. at 62:21-65:10.) Currently, the storage affiliate program offers features such as advertising on EMove's website, the use of U-Haul reservation agents, discounted storage supplies, access to the WebSelfStorage software and technical support, and tenant insurance from another U-Haul subsidiary. (Pls.' Resp. Opp. Summ. J. Ex. 8.)

4

("Kenes") performed research to ensure the accuracy of the information relating to SiteLink and other WebSelfStorage competitors. (Kenes Dep. 38:21-25, 41:7-25, 48:15-21.)

According to plaintiffs, these charts and brochures contain a number of misrepresentations about SiteLink. These misrepresentations include (1) "erroneously inflating the price of [SiteLink];" (2) "erroneously representing that technical support for [SiteLink] is not included in the price of the software;" (3) "erroneously representing that [SiteLink] does not support real-time confirmed reservations;" (4) "erroneously representing that [SiteLink] does not include integrated credit-card processing;" (5) "erroneously representing that [SiteLink] does not include upgrades in the purchase price;" (6) "erroneously representing that [SiteLink] does not include integrated tenant insurance;" (7) "erroneously representing that [SiteLink] does not include fully integrated online-payment processing;" and (8) "erroneously representing that [SiteLink] does not include fully integrated call-center service." (Second Am. Compl. ¶ 23.) It appears that, according to plaintiffs, these misrepresentations stem primarily from use of the term "fully integrated" in the 2008 brochure. (Pls.' Resp. Opp. Summ. J. 7; see Celaya Dep. 239:1-7.)

B.   The U-Haul Defendants' Role in the Production and Distribution of the 2008 Brochure

In 2007, U-Haul Chief Executive Officer Joe Shoen directed EMove to update its marketing materials. (Tonan Dep. 47:7-18.) As noted above, that task was delegated by Celaya to Ozkan with respect to updating the information on SiteLink in the 2005 brochure. (Celaya Dep. 291:4-11.) After receiving the information from Ozkan, Celaya and Sauer met with representatives of Web Team. (Sauer Dep. 103:14-25.) At that meeting, the individuals discussed using the aforementioned term "fully integrated" in the 2008 brochure as a "buzzword" to describe the

5

functionality offered by WebSelfStorage as opposed to SiteLink and other competing software products. (Bierman Dep. 176:15-177:24.)

EMove took the contents of the 2008 brochure to A&M, which then performed design, layout, and printing work on it. (Celaya Dep. 95:20-96:16; Celaya Oct. 2009 Aff. 9.) The completed brochure was shown to John Taylor ("Taylor"), who is both president of U-Haul and a director of EMove. (Celaya Dep. 300:14-301:11; Pls.' Resp. Opp. Summ. J. Ex. 18.) It was then distributed at trade shows and throughout the country via U-Haul's network of state-based marketing companies through "U-Haul's field representatives." (Huberty 30:2-32:8; Sauer Dep. 93:3-94:18.) The 2005 brochure was also distributed by U-Haul's marketing companies, although the 2004 chart appears only to have been distributed at trade shows. (Celaya Dep. 192:6-19.)

C.   Relationship Between U-Haul and Its Subsidiaries

Many of plaintiffs' arguments are premised on the integration between various U-Haul entities. Plaintiffs note that, in addition to allowing EMove to sell its WebSelfStorage software, U-Haul provides advertising, accounting services, technology support, personnel, and payroll services to EMove in exchange for $25.00 per year. (Master Services Agreement, Pls.' Resp. Opp. Summ. J. Ex. 10; Settles Dep. 50:5-17.) It also notes that EMove, Web Team, and A&M are all located in the same building as U-Haul. (Celaya Dep. 84:2-4, 95:25-96:3.) These defendants share a number of common officers and directors, including Taylor, president of U-Haul and a director of the other defendants; Jennifer Settles, secretary of all defendants; George Olds, an officer of each of the U-Haul defendants; Samuel Shoen, the president and treasurer of EMove and Web Team and a director of all defendants; and Edward Shoen, a director of U-Haul, EMove, and Web Team. (Pls.' Resp. Opp. Summ. J. Ex. 18.) EMove currently has only seven employees. (Sauer Dep. 25:23-25.)

6

Plaintiffs also point to the integrated marketing among the various entities within "the U-Haul umbrella." Numerous wholly-owned subsidiary marketing companies are able to order advertising and promotional materials, including the WebSelfStorage brochures at issue here, from U-Haul's "Web Best" internet site. (Huberty Dep. 31:3-25; Celaya Dep. 263:12-264:25.) These companies work in conjunction with EMove to sell WebSelfStorage, because they are "all under the U-Haul name, . . . and basically part of their job is to sell the EMove program." (Huberty Dep. 32:1-8; 34:11-16; 35:1-9; 64:16-18.) The marketing companies report to a U-Haul area district vice-president, who reports to an executive vice-president, who reports to U-Haul's CEO. (Celaya Dep. 22:12-23.)

## DISCUSSION

A.    Plaintiffs' Second Motion to Compel

At hearing on June 9, 2011, the court stated that it would first "address the merits of plaintiffs' motion [to compel] and, if that motion was meritorious, would deny without prejudice the [U-Haul defendants'] motion for summary judgment." (Order Memorializing June 9, 2011 Hearing [DE 142] at 5.) The court stated that it was "more efficient upon resolution of the discovery motion to allow defendants to re-file their motion, making in unified form their arguments . . . ." (Id.) Accordingly, before turning to the merits of the summary judgment motion, the court must first decide whether plaintiffs' are entitled to discovery regarding revenue generated by U-Haul-related companies from the sale of goods and services other than WebSelfStorage as well as documentation regarding EMove's customer transactions and expenses.[3]

---

[3] In the court's discretion, and for good cause shown, plaintiffs' motion for leave to file a reply to defendants' response to the motion to compel is ALLOWED.

1. Standard of Review

As a general matter, "[d]iscovery . . . is broad in scope and freely permitted." <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 402 (4th Cir. 2003). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and, upon order of the court for good cause shown, "any matter relevant to the subject matter involved in the litigation." Fed. R. Civ. P. 26(b)(1). Information is relevant "if it is germane and has any bearing on the subject matter of the case." <u>West Penn Power Co. v. NLRB</u>, 394 F.3d 233, 242 (4th Cir. 2005). Such information need not be admissible, and need only be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). The court has broad discretion in determining whether proposed discovery is relevant. <u>See</u> <u>Watson v. Lowcountry Red Cross</u>, 974 F.2d 482, 489 (4th Cir. 1992).

2. Analysis

At the heart of plaintiffs' motion to compel is a dispute between the parties over the relevancy of the proposed discovery to the issue of damages. Defendants argue that information regarding goods and services that plaintiffs do not offer is irrelevant and that only EMove, among the U-Haul companies, competes with plaintiffs. Plaintiffs, by contrast, believe that all of defendants' profits are relevant to issue of damages. Defendants also argue that it would be unduly burdensome to comply with plaintiffs' requests.

A plaintiff who has successfully established a violation of § 43(a) of the Lanham Act is entitled to recover,

> subject to the principles of equity, (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must

prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a). The equitable factors that must be considered in determining whether an award of profits is appropriate include

(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 175 (4th Cir. 2006).

A plaintiff is entitled to defendant's profits which are "attributable" to the unlawful use of the plaintiff's mark. See Quick Techs., Inc. v. Sage Group PLC, 313 F.3d 338, 349-50 (5th Cir. 2002). Once the plaintiff has demonstrated that the balance of the equities favors an accounting of profits and has met its burden of establishing "defendant's sales," the defendant "must prove all elements of cost or deduction claimed," 15 U.S.C. § 1117(a), including demonstrating that "some of [its] sales were unrelated to and unaided by" the unlawful conduct. See Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 63-64 (1st Cir. 2008).

Plaintiffs argue that sales from noncompeting products are attributable to the allegedly false advertising brochure because the other U-Haul entities were able to increase sales of these noncompeting products by, for example, bundling them with WebSelfStorage. According to plaintiffs, defendants used the false representations about SiteLink to "get their foot in the door" with independent self-storage facilities, and then cross-marketed other services. Based upon the evidence now before the court, this theory is not implausible.

9

Defendants argue, however, that allowing plaintiffs to recover defendants' profits relating to goods and services as to which the parties do not compete would constitute an inequitable "penalty" as opposed to "compensation" as required by § 1117(a). The case law does not support this argument. An award of a defendant's profits is justified not only based upon actual damages suffered by the plaintiff (*e.g.*, through diverted sales), but also based upon the need to remedy unjust enrichment and to deter infringement. See Masters v. UHS of Del., Inc., 631 F.3d 464, 474 (8th Cir. 2011); Am. Rice, Inc. v. Producers Rice Mill, Inc., 518 F.3d 321, 340 (5th Cir. 2008); Black & Decker Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 855 (E.D. Va. 1998). Such an award is not a "penalty" under the statute.

Defendants also attempt to distinguish Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23 (1st Cir. 2002), a case cited by plaintiffs as one allowing an accounting of profits that included sales of noncompeting goods, on the grounds that the parties in that case were direct competitors. Defendants argue that the only party who directly competes with plaintiffs in this case is EMove, and that the other defendants' profits are therefore not subject to an accounting under the Lanham Act. Although defendants are correct that Tamko did involve only parties who sold products that directly competed with one another, this fact does not alter the court's analysis. The First Circuit in Tamko discussed "direct competition" only because it had held in an earlier case that "an accounting of defendant's products *where the products directly compete* does not require fraud, bad faith, or palming off." Id. at 36 (emphasis added). The Tamko court did not hold that products must directly compete for profits to be awarded, and in fact the court's language suggests that an account of profits for products that do *not* directly compete is permissible when the equities would allow for such an award.

10

Because defendants' profits for *all* goods and services attributable to the allegedly false advertising may be awarded to plaintiffs, the revenue and/or profits received by U-Haul from WebSelfStorage customers for other services is relevant. Nevertheless, defendants state that it would be unduly burdensome to produce the requested information because it does not track sales, revenue, or profit per customer. Defendants state that data from different areas of the U-Haul family's business operations are stored in multiple databases. Accordingly, they maintain that producing the requested information would require at least two separate electronic inquiries per customer.

Defendants also contend that a second grouping of requested materials, the so-called "point-of-sale" or "source" documents and the documents supporting EMove's expenses for the period between 2004 and 2010, would be overly burdensome to produce. They contend that these documents are not kept in the ordinary course of business, but instead are kept also in various databases depending on which U-Haul entity is involved in the transaction.

The court may limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C). Although the court is cognizant of defendants' arguments that the proposed production is burdensome, including, as forecast at hearing, issues relating to their ability to produce such discovery in advance of trial now set for March 19, 2012, they have not substantiated those arguments on the record before the court. It is

11

not clear why providing information readily available in databases – even if that information is spread across three or more databases – causes the undue burden described by defendants.

Accordingly, for the reasons set forth above, plaintiffs' motion to compel is GRANTED. EMove is directed to provide full and accurate responses to Interrogatory Nos. 2, 4, 11, and 14-15, and Request for Production Nos. 3-13, 16, 28, and 30. U-Haul is directed to provide full and accurate responses to Interrogatory Nos. 2 and 14, and Request for Production Nos. 7, 9, 14-15, 18-19, and 29-30. Defendants shall produce this information on or before August 19, 2011, absent a particularized showing as to why said information cannot be provided by that date.

B.   The U-Haul Defendants' Motion for Summary Judgment

Consistent with its discussion with the parties at hearing regarding the interplay of plaintiffs' motion to compel and the summary judgment motion now pending, the court DENIES WITHOUT PREJUDICE the U-Haul defendants' motion for summary judgment. These defendants may renew their motion, presenting any additional arguments in unified format, on or before November 15, 2011. On this basis, the court also DENIES AS MOOT plaintiffs' request to allow for additional discovery under Rule 56(d).

Although the U-Haul defendants' motion has been denied without prejudice, the court has thoroughly reviewed the parties' briefing on that motion. The factual record in this case is extensive, and it has not been easy – particularly where the parties have provided the court with only snippets of various depositions – for the court to piece together a statement of all of the relevant facts in play. The parties would be wise to use the opportunity for further summary judgment briefing not only to hone their arguments, but also to correct any misunderstanding the court may be laboring under given the parties' presentation of the facts to date.

12

To assist the court in its consideration of any future motions for summary judgment, the party relying on any individual's deposition testimony shall file the complete deposition transcript on the docket and shall provide a courtesy copy of the same to the clerk's office. If a party files a particular deposition transcript in support of its motion, the responding party is relieved of its obligation to file a second copy.

## CONCLUSION

For the reasons set forth above, plaintiffs' second motion to compel (DE # 122) and plaintiffs' motion to file a reply in support of that motion (DE # 136) are GRANTED. Defendants shall provide the information identified in plaintiffs' motion on or before August 19, 2011, absent a particularized showing as to why the information cannot be provided by that date.

The U-Haul defendants' motion for summary judgment (DE # 97) is DENIED WITHOUT PREJUDICE. Plaintiffs' motion for additional discovery to respond to the U-Haul defendants' summary judgment motion (DE # 108) is DENIED AS MOOT. With respect to any future motion for summary judgment, the complete deposition transcript of any witness whose deposition testimony is relied upon in a party's brief must be filed on the docket, with a courtesy copy provided to the clerk's office.

SO ORDERED, this the 22nd day of June, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge