# THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

NO. 5:08-CV-403-FL

| | | |
|---|---|---|
| SMD SOFTWARE, INC., a North Carolina corporation; and SITELINK SOFTWARE, LLC, a North Carolina limited liability company, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| EMOVE, INC., a Nevada corporation; and WEB TEAM ASSOCIATES, a Nevada corporation, | ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion to exclude pursuant to Federal Rules of Civil Procedure 16, 26, 33, and 37 (DE 278). In their motion, filed July 16, 2013, defendants request that the court exclude twenty-one (21) witnesses disclosed by plaintiffs on July 16, 2013. The parties briefed the matter, and the court held hearing on September 26, 2013, and directed supplemental briefings from the parties, filed October 3, 2013. In their supplemental brief, plaintiffs inform they now wish to call only ten (10) of the twenty-one (21) witnesses.[1] The defendants inform in their supplemental response, under certain conditions, they no longer object to plaintiffs calling one of these ten (10) witnesses, Brad Lund, at trial. In this posture, the court takes up the issues now presented.

---

[1] The witnesses plaintiffs still seek to call are (1) Jim Gail, (2) Sue Haviland, (3) Anne Ballard, (4) Carly Castillo, (5) Mike White, (6) Bob Smith, (7) Chris Johnson, (8) Brad Lund, (9) Sandy Cadd, and (10) Cathy Landry.

## BACKGROUND

Plaintiffs develop and market management software, called SiteLink and SiteLink Web Edition, for the self-storage industry. In their second amended complaint, they allege that defendants (owners, designers and marketers of competing software, WebSelfStorage) have published false advertising materials comparing the two products. After this court's order granting in part and denying in part defendants' second motion for summary judgment (DE 270), plaintiffs' claims remain against defendants EMove and Web Team Associates for unfair and/or deceptive trade practices, tortious product disparagement, and false advertising under the federal Lanham Act. They seek monetary and injunctive relief.

On October 12, 2012, defendants' self-storage industry expert died unexpectedly. Prior to his death, plaintiffs had filed a Daubert motion seeking to exclude his testimony. The court ruled on this motion after self-storage professional Tom Litton died at the age of fifty-five (55), as it now understands, having been noticed at this juncture of his untimely passing last year. On March 29, 2013, the court had denied the Daubert motion in part and granted it in part. Defendants reiterate they intend to rely on Mr. Litton's recorded deposition at trial.

In its order on summary judgment, the court directed the parties to confer and file a supplemental joint report informing as to the anticipated length of trial and suggested trial dates. Report was filed May 17, 2013, stating that the parties believed supplementation of discovery was necessary, "including providing updated financial records," and that such supplementation would be accomplished by June 28, 2013. The parties also offered that trial likely will take around one to two weeks, and that they prefer a trial commencing in December 2013, though one as early as October was signaled.

2

The court responded on order reliant on the parties' presentation. By order entered May 20, 2013, the court selected December 2, 2013, as the date for trial to commence.[2] It also approved the supplementation date of June 28, 2013, the parties proposed. The text order, squarely drawing down on the parties' agreement as presented, reads in full:

This matter comes now before the court upon the parties' joint report, filed May 17, 2013. Upon consideration of the proposed trial dates, the court specially sets the case for trial to commence with jury selection Monday, December 2, 2013, at New Bern. The final pretrial conference is set for 10:00 am on Tuesday, November 19, 2013, at New Bern. Any motion for bifurcation shall be filed on or before May 31, 2013. In accordance with the parties' agreement, supplementation of discovery responses shall be made by June 28, 2013. Further mediation shall be undertaken, as discussed in the parties' joint report. Reference is made in furtherance of the parties' pre trial planning, to section V of the court's case management order, entered October 21, 2008, and the activities and deadlines therein determined. Except as amended, those deadlines remain in force and effect. The clerk is directed to unseal the court's order entered April 30, 2013 (DE 270).

On August 9, 2013, defendants filed the instant motion to exclude. Through the briefing, the court learned that the parties had agreed after entry of the order above and without court involvement, to extend the supplementation deadline another three weeks or so, from June 28, 2013, to July 16, 2013. On July 16, 2013, plaintiffs identified twenty-one (21) potential new witnesses, and this motion followed.

Fifteen (15) of these witnesses purportedly have knowledge of alleged post-discovery false advertising undertaken by defendants (herein called the "false advertising witnesses"). In their supplemental briefing filed after hearing, plaintiffs inform they only seek to call seven of these false

---

[2] By oral order pronounced at the September 26, 2013, hearing, the court informed that trial would commence on December 3, 2013, rather than December 2, 2013.

advertising witnesses.[3]

The remaining six witnesses (herein called the "industry witnesses") are witnesses with knowledge of the self-storage industry whom plaintiffs identified to testify regarding (1) their knowledge of the parties' products; (2) factors they consider when selecting, or advising others on the selection of, self-storage management software; and (3) the effectiveness of various marketing methods within the self-storage industry. Plaintiffs inform in their recent filing that they now wish to call only three of these industry witnesses, taking into consideration issues of timing and other things.[4] Plaintiffs argue that the testimony of three industry witnesses replaces their lost opportunity to cross-examine defendants' expert, Mr. Litton, at trial before a jury.

## DISCUSSION

A.    Scope of Supplemental Discovery

The court first considers whether the disclosure of these new witnesses was in violation of this court's scheduling order or otherwise untimely.

The deadline for fact discovery in this matter was October 15, 2011, and the deadline for expert discovery was March 19, 2012. However, in joint report and plan filed May 17, 2013, the parties informed as to their belief that "supplementation of their discovery responses, including providing updated financial records, is necessary" and proposed to supplement discovery on June 28, 2012. As noted, the court adopted this deadline by text order entered May 20, 2013, (and the parties later agreed to extend this deadline into July).

---

[3] The false advertising witnesses plaintiffs still wish to call are: (1) Brad Lund, (2) Sandy Cadd, (3) Cathy Landry, (4) Carly Castillo, (5) Mike White, (6) Bob Smith, and (7) Chris Johnson.

[4] These three witnesses are: (1) Jim Gail, (2) M. Anne Ballard, and (3) Susan Haviland.

4

Defendants argue that this supplementation was meant to update various records, mainly financial records, where plaintiffs are pursuing future damages for charts that defendants claim have not been published since 2009. Thus, defendants note, the parties are now in the "future" and for this reason, supplementation was needed.

Plaintiffs, on the other hand, contend that because the supplementation deadline adopted by the court included no express limitation on the substance of the supplementations, they timely and properly supplemented their Rule 26(a)(1) disclosures. Looking towards a complex trial in a case filed in 2008, then less than five months away, the court is struck by the breadth of the disclosure made by plaintiffs in July.

It appears that plaintiffs became aware of all of the "false advertising" witnesses by March 20, 2013. See Pls.' Resp. 6, 11 (dates plaintiff learned of the first and last false advertising witnesses, respectively). Plaintiffs state that in February 2013, the parties were discussing supplementation and plaintiffs determined to disclose the false advertising witnesses on the agreed upon date, later extended to July 16, 2013. See id. at 15 n. 19. Knowing then, in late winter 2013, that they had many additional witnesses to disclose, it is curious that plaintiffs joined in a report to this court in spring 2013, which fails May 17, 2013, then to mention that discovery reasonably might need to be re-opened.[5]

Now, plaintiffs would say they have realized trial may need to be continued in light of these new witnesses, see Pls.' Resp. 25. But in May, 2013, plaintiffs joined in suggestion that a trial date as early as October could be considered. See May 17, 2013, Joint Report. Surely, if the parties

---

[5] Plaintiffs state that they thought until defendants filing of their May 31, 2013, motion to bifurcate, that defendants would also file a motion to substitute an expert for the deceased Mr. Litton. Accordingly, it was not until after the filing of the May 17, 2013, supplemental joint report that plaintiffs decided to call the "industry witnesses."

intended to call previously undisclosed witnesses, they would have proposed to this court at least one provision for discovery of those witnesses in the process of the trial setting.[6]

"Rule 26 promotes fairness both in the discovery process and at trial. For Rule 26 to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse." Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992). Importantly, if the supplementation ordered by the court extended to new witnesses, the court would have made provisions for reopening discovery in its order, which it did not do, in reliance on the joint report. Again, that report simply in this part recited "[t]he parties believe that supplementation of their discovery responses, including providing updated financial records, is necessary, and agree to do so..." Other provisions in the court's order, such as the imminent trial date, also underscore that disclosure of new witnesses was not within the scope of the supplementation ordered by the court. This disclosure was untimely.[7]

B.     Exclusion Analysis

Because late identification of these new witnesses was not within the scope of the discovery supplementation, the court has concluded that disclosure of the witnesses at issue was untimely. The court now considers whether sanctions are warranted, and if so, what sanctions.

---

[6] Plaintiffs argue that the parties understood this supplemental disclosure deadline to include supplementation of witnesses where defendants reserved the right to call any of the witnesses from this case's sister Arizona action. However, defendants merely stated they "reserve[d] the right" to call these witnesses. Moreover, defendants have stipulated they will not call any of these witnesses. See Defs. Reply 4.

[7] To the extent that plaintiffs argue that they had already disclosed these witnesses in discovery, this argument is without merit. The fact that these witnesses names might have appeared within over 7,200 pages of call log notes or customer lists which were difficult to read and had thousands of names, see Defs. Mem. Supp. Exs. L & M, does not amount to proper disclosure under Rule 26(a)(1). See Hoyle v. Freightliner, LLC, 650 F.3d 321, 328-30 (4th Cir. 2011) (references to a witness in an interrogatory response and in deposition testimony did not prevent preclusion of the witness was not a substitute for actual Rule 26(a)(1) disclosure).

Defendants contend that where the court's case management order governs the disclosure of fact witnesses, the rule applicable to this situation Federal Rule of Civil Procedure 16(f). Plaintiffs argue that the court's case management order only governs the disclosure of expert witnesses, and therefore Rule 16(f) does not apply, and instead propose the court consider Rule 37(c)(1).

Rule 16(f)(1)(C) provides for sanctions when a party "fails to obey a scheduling or other pretrial order." The court entered a case management order on October 21, 2008. The deadlines set forth therein have been amended numerous times throughout this litigation, but the final deadline for fact discovery was established by order entered June 13, 2011, providing that fact discovery concluded on October 15, 2011 (DE 142 at 4).

The court's case management order also provided that the parties were to exchange Rule 26(a)(1) disclosures by November 7, 2008, and that any supplementation pursuant to Rule 26(e) were due forty (40) days before the deadline for completion of all discovery (DE 14 at 1, 3).[8] Thus where the court's order governs disclosure of any witnesses, Rule 16(f) applies.

Under Rule 16(f), the court may issue "any just order," including one imposing sanctions provided for in Rule 37(b)(2)(A)(ii)-(vii). The sanctions provided for in that rule are as follows:

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

---

[8] The court actually established a date certain for the supplementation deadline. The text of this court's case management order, however, makes clear that this date was selected because it is forty (40) days before the close of discovery. Thus where the discovery deadline is extended, it is reasonable to correspondingly extend the supplementation deadline.

Fed. R. Civ. P. 37(b)(2)(A).

The primary focus of the Rule 16(f) analysis is "whether [the disobedient party] has shown good cause for its failure to timely disclose." Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 309 (M.D.N.C. 2002). If the court finds such a violation without good cause, it has "broad discretion in employing sanctions." Id. at 311. Relevant considerations include: (1) the explanation for the failure to obey the order; (2) the importance of the testimony; (3) the prejudice to the opposing party by allowing the disclosures; (4) the availability of alternative or lesser sanctions; (5) the interest in expeditious resolution of litigation; (6) a court's need to manage its docket; and (7) public policy favoring disposition of cases on the merits.[9] Id.

Defendants argue that plaintiffs have made no showing of good cause for their failure to timely disclose any witnesses. Plaintiffs give differing reasons for their untimely disclosure of the false advertising witnesses and the industry witnesses. Thus the court considers these categories of witnesses separately.

1.     The False Advertising Witnesses

The court considers, first, whether plaintiffs have shown good cause for failing to obey its order in their untimely disclosure of the false advertising witnesses. See Akeva L.L.C., 212 F.R.D. 309-11. Plaintiffs argue that their failure to disclose these during the discovery period is justified

---

[9] The court notes that some courts within this circuit have determined that the five factors articulated in Southern States Rack & Fixture Inc. v. Sherwin–Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) for determining whether evidence should be excluded under Rule 37(c)(1) are the proper factors to consider in an exclusion analysis under Rule 16(f). See, e.g., East West, LLC v. Rahman, No. 1:11-CV-1380, 2012 WL 4105129, at *6 (E.D.Va. Sept. 17, 2012); Luma Corp. v. Stryker Corp., 226 F.R.D. 536, 544 (S.D.W. Va. 2005). The Southern States factors are very similar to the factors set forth above. See Southern States Rack & Fixture, Inc., 318 F.3d at 597 (considering "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence."). The court's conclusions are the same under either analysis.

8

Case 5:08-cv-00403-FL   Document 297   Filed 10/10/13   Page 8 of 19

where they did not learn of such witnesses during the discovery period. This argument is well-founded. The testimony of all of these witnesses relates to conduct by defendants that did not occur until after the discovery period closed. The alleged actions by defendants' alleged representatives[10] took place between roughly June 28, 2012, and March 20, 2013. See Pls.' Ex. E, Various E-mails, 4392-93, 4408.

Plaintiffs also claim that there is good cause for their further delay in not disclosing these witnesses until July 16, 2013. By the time they determined, in February 2013, that these individuals were potential witnesses, the parties had begun discussing supplementation of their disclosures. Plaintiffs then determined to disclose the witnesses by the agreed-upon date. This argument finds less favor with the court, for obvious reasons.

Rule 26(e)(1)(A) provides that supplementations must be made "in a timely manner." The advisory committee notes to that rule explain that "[s]upplementations need not be made as each new item of information is learned but should be made at appropriate intervals." Fed. R. Civ. P. 26(e) advisory committee note (1993). These supplementations should be made "with special promptness as the trial date approaches." Id. Read in conjunction with the directive of Rule 1 that the rules should be "construed and administered to secure the just, speedy, and inexpensive determination of every action," plaintiffs' five-month delay in disclosing such a great number of potential witnesses

---

[10] Four of the false advertising witnesses plaintiffs wish to call are individuals who purportedly made the allegedly false representations at issue. One of these – Carly Castillo – is an employee of defendant EMove, the other three – Mike White, Bob Smith, and Chris Johnson – are employed as "area field managers" by three different subsidiaries of defendant EMove's parent company, U-Haul International, Inc.

9

is concerning, especially where this complicated trial specially set was four-and-a-half months away at the time of their disclosures.[11]

Upon this determination, the court should consider the factors laid out to determine whether exclusion is an appropriate sanction. As already discussed, plaintiffs' failure to obey the court's order, insofar as it relates to timely supplementation under Rule 26(e), is concerning. Plaintiffs knew they were considering introducing nearly all of the false advertising witnesses in February 2013, yet said nothing until July 16, 2013. Considering the press on defendants to conduct discovery on the false advertising witnesses in light of the fast-approaching trial date, plaintiffs fail to account for why they did not disclose the possibility of these additional witnesses earlier.

The court's inquiry with respect to importance of the testimony continues with focus on relevance. Defendants acknowledge that the testimony of one of these witnesses, Brad Lund, is relevant to the claims at issue where he received one of the comparison charts that are at the core of this lawsuit. The relevance of the testimony of the other false advertising witnesses is hotly contested where their testimony does not relate to the comparison charts. If the testimony is not relevant, it cannot be important. It may, however, have some relevance to damages. See, e.g., Salami v. N. Carolina Agr. & Technical State Univ., 394 F. Supp. 2d 696, 710 (M.D.N.C. 2005) (testimony that could impact plaintiff's damages found to be important); Silicon Knights, Inc. v. Epic Games, Inc., 5:07-CV-275-D, 2012 WL 1596722 at *8 (E.D.N.C. May 7, 2012).

---

[11] Although the court is considering plaintiffs' Rule 26(e) obligations, it still evaluates plaintiffs' untimely disclosure pursuant to Rule 16(f) where the case management order incorporates Rule 26(e).

For example, this testimony may be relevant to punitive damages for plaintiffs' tortious product disparagement claim.[12] In determining what amount of punitive damages, if any, to award, the trier of fact is to consider, *inter alia*, "the defendant's awareness of the probable consequences of its conduct" and "[w]hether the defendant profited from the conduct." N.C. Gen. Stat § 1D-35. Evidence of continuing statements having some similarity to the statements made in the comparison charts, might tend to show that defendants found these statement to be effective, which would relate to the section 1D-35 factors above. As defendants point out, however, all of the false advertising witnesses who received these statements remain plaintiffs' customers. Thus, this would be weak evidence of damages. Accordingly, among the false advertising witnesses, the testimony of Brad Lund has unique relevance and importance.

Prejudice to defendants must also be considered. Trial in this matter is set for December 3, 2013. Defendants would undoubtedly wish to depose these seven witnesses. "Discovery, however, is long closed, and the [December 3, 2013,] trial date is nigh. This court cannot cure the surprise [plaintiffs'] untimely disclosure would cause without cancelling the trial and rescheduling it." Silicon Knights, Inc., 2012 WL 1596722 at *8. As was the case in Silicon Knights, this case has been pending for a long time, and trial has been specially set. This factor weighs against plaintiffs. Id. (citing MicroStrategy Inc. v. Bus. Objects, S.A., 429 F.3d 1344 (Fed. Cir. 2005)). Especially given the press of the case load in this district, the court's carving out of a lengthy trial term,

---

[12] As defendants point out, these isolated statement do not constitute "commercial advertisement" sufficient to support a Lanham Act false advertising claim where they were not designed to disseminate information to the public. See, e.g., Applied Med. Res. Corp. v. Steuer, 527 F. Supp. 2d 489, 493 (E.D. Va. 2007) (citing Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 57 (2d Cir.2002)); BSN Med., Inc. v. Parker Med. Associates LLC, No. 3:09-CV-15, 2011 WL 5509030, at *30-31 (W.D.N.C. Nov. 17, 2011) This argument, however, has no impact on plaintiffs' claims under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, and for tortious product disparagement.

11

specially dedicated to this case, and giving other resources over to meet the needs of the case, necessarily impacts the court's work in and administration of other cases, resulting in a shifting set of priorities not readily undone without adverse impact.

Where this case has been pending for a long time, a continuance is not an immediately available, lesser sanction. A continuance would harm the interest in expeditious resolution of litigation and this court's need to manage its docket.

Finally, considering the public policy favoring disposition of cases on the merits, the court notes that of all of these witnesses, the expected testimony of Mr. Lund is unique in its direct relation to central issues of this case.

In light of the aforementioned factors, the court finds that exclusion of all of the false advertising witnesses, excepting Brad Lund, is appropriate. Where, among the false advertising witnesses, Mr. Lund is uniquely important to plaintiffs and where defendants acknowledge that his inclusion would not necessitate a continuance of trial, the court allows his testimony.

As requested by defendants, however, his testimony must be limited to issues pertaining to his receipt of the comparison chart. Plaintiffs must produce him for deposition at their expense, no later than November 5, 2013. And they must produce documentation on Mr. Lund at least five business days prior to his deposition.

        2.      The Industry Witnesses

Plaintiffs argue that untimely disclosure of the industry witnesses is substantially justified where they only recently learned that defendants were not going to seek to substitute another expert for the deceased Mr. Litton. However, plaintiffs cite no law, nor is the court aware of any precedent providing that the death or other unavailability of another party's witness provides good cause to

12

untimely disclose the party's own witnesses to serve as a substitute for cross-examination. Of course, the court recognizes that unexpected death, as here, of an important expert witness is rare. That fact necessarily promotes on the eve of trial consideration of how prejudice to both sides may be mitigated, while the schedule of the trial is promoted.

Plaintiffs, through the industry witnesses, seek to "refute Mr. Litton's sweeping conclusions that Defendants' representations would not deceive Plaintiffs' potential customers and that Plaintiffs' potential customers would not rely on such representations [as were contained in the comparison charts]." Pls.' Resp. 24. As clarified at hearing, plaintiffs seek to do so by having the industry witnesses testify – based on their personal experiences – about (1) the falsity of the statements in the comparison charts; (2) factors they consider when selecting self-storage software; and (3) marketing methods within the self-storage industry that they have observed, and its impact on them.

a.    Nature of the Industry Witnesses Testimony

Defendants contend that the expected testimony from plaintiffs' three remaining industry witnesses is expert testimony. The court must consider this argument as a threshold issue, because if the industry witnesses would be testifying as experts, they must be excluded from trial.

If these witnesses are experts and were not excluded, they would have to provide expert reports, and defendants, in turn, would be given the opportunity to obtain and disclose rebuttal experts. This would wreak havoc on this court's docket, and harm the interest in expeditious resolution of litigation.

Additionally, the court carefully must examine plaintiffs' contention that calling three witnesses of their own, with extensive familiarity with the storage industry, is equivalent to cross-

13

examining defendants' deceased expert, and how this relates to plaintiffs' explanation for late disclosure. Introduction of three new experts at this late date surely would prejudice defendants.

Federal Rule of Evidence 701 provides that,

[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
    (a) rationally based on the witness's perception;
    (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
    (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"Because Rule 701 does not distinguish between expert and lay witnesses, but rather between expert and lay testimony, the line between lay opinion testimony under Rule 701 and expert testimony under Rule 702 is a fine one." United States v. Perkins, 470 F.3d 150, 155 (4th Cir. 2006) (quotations and citations omitted). "A critical distinction between Rule 701 and Rule 702 testimony is that an expert witness must possess some specialized knowledge or skill or education that is not in possession of the jurors," Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 203 (4th Cir. 2000). "[W]hile lay opinion testimony must be based on personal knowledge, expert opinions may also be based on firsthand observation and experience." Perkins, 470 F.3d at 155-56.

Plaintiffs anticipate that the industry witnesses will testify that defendants' representations about plaintiffs' software are false, based upon their own experience with the software. For example, plaintiffs state that the industry witnesses can testify from their own experience that defendants' representations regarding the price of plaintiffs' software is false where they have been customers of plaintiffs and know the prices plaintiffs charged firsthand.

They believe the industry witnesses can testify from their own experience with the parties' software that defendant's representations regarding their features also are false. This testimony

14

meets the standards of Rule 701 where it is based in the witnesses' perception, helpful to determining a fact in issue, and not based in any kind of specialized knowledge.

The factors considered by, and important to, these witnesses when purchasing self-storage software, is fact testimony, not expert opinion. The court notes, however, that broader extrapolation from direct fact testimony about factors the industry witnesses personally have considered, to a statement such as "self-storage owners tend to consider the following factors" would be expert testimony. See United States v. Oriedo, 498 F.3d 593, 603 (holding that testimony derived from "a wealth of experiences" is expert testimony derived from specialized knowledge).

Finally, with respect to the effectiveness of marketing methods, plaintiffs anticipate the industry witnesses will testify whether they rely on, and are influenced by, promotional materials such as brochures. Once again, this testimony would be fact testimony based in the witnesses' personal knowledge. If, however, the industry witnesses are to extrapolate from their experiences to testify about what self-storage owners as a whole are influenced by, they would be testifying as experts. See Oriedo, 498 F.3d at 603. Accordingly, the court finds, all things considered, that plaintiff is not offering these witnesses as experts.

          b.      Appropriate Sanction for Late Disclosure of the Industry Witnesses

Plaintiffs knew that the issues these witnesses are proffered to testify about were issues in the trial. They could have timely introduced witnesses to testify thereto before Mr. Litton's death. And they knew of Mr. Litton's death last year.

It is unfortunate for plaintiffs that they have lost the ability to cross-examine Mr. Litton at trial, but such an event does not, without more, afford good cause for untimely disclosure, especially where nothing prevented these plaintiffs from timely disclosing the witnesses or raising last year

15

witness issues implicated by the death of Mr. Litton. See Wright Root Beer Co. v. Dr. Pepper Co., 414 F.2d 887, 890 (5th Cir. 1969) ("The unexpected is to be expected at the trial of cases, including the necessity for using depositions when the deponent has met an untimely death before trial. [opposing] counsel did not, indeed could not, contend that his cross was limited in any way except by his own choice.").

Looking to the factors the court should consider in fashioning a sanction, plaintiffs' explanation for failure to obey this court's order to timely disclose and supplement potential witnesses by the required deadline is lacking. Plaintiffs assert they only wish to call these witnesses to cure the prejudice accruing to them from their lost ability to cross-examine Mr. Litton. Having three industry witnesses testify in direct contravention to Mr. Litton's conclusions has potential to be more powerful than vigorous cross-examination of one expert, anyway.

Indeed, the evidence plaintiffs' counsel would have used in cross-examination is still available to plaintiffs. Thus, the only prejudice to plaintiffs is the lost impact of potentially forcing Mr. Litton to recant some or all of his testimony in front of the jury, and there is no certainty of that. Plaintiffs' contention that they have been prejudiced by this lost opportunity relies on speculation that Mr. Litton would have attended large parts of the trial, seen plaintiffs' product demonstration there, then fallen to his knees when confronted on cross-examination with evidence adduced by plaintiffs. While this was a possibility, it was far from a certainty. Accordingly, plaintiffs' explanation for their late disclosure is lacking.

The testimony of these industry witnesses, on the other hand, is very important, and goes to the heart of plaintiffs' case for liability and damages. This factor weighs in plaintiffs' favor. Defendants, however, would be prejudiced by the introduction of these witnesses. Defendants

16

cannot offer Mr. Litton's live testimony in contravention to the industry witnesses, and they would face a good deal of additional trial preparation in a short time. Moreover, the testimony of these three witnesses may well go beyond what plaintiffs could have established through cross-examination of Mr. Litton, alone. All things considered, this factor weighs in defendants' favor.

Considering the availability of lesser sanctions, the court finds that a lesser sanction is appropriate here. Allowing plaintiff to call only one industry witness will serve to alleviate the harm to plaintiffs from their lost opportunity to cross-examine Mr. Litton without unduly prejudicing defendants, and keep this case on its current trial track.

Plaintiffs inform that these witnesses are willing to travel to Raleigh for deposition on November 4, or 5, 2013, and the industry witness plaintiffs select shall do so. The deposition shall be conducted at plaintiffs' expense, and plaintiff must produce documentation on this witness at least five business days prior to deposition. The court also allows defendants, as requested, to identify one non-expert industry witness of their own, by October 17, 2013, who shall be made available to plaintiffs for deposition on or before November 5, 2013, with that witness's documentation due to plaintiffs not later than five days before the deposition.

Allowing an industry witness for each side, in addition to the one false advertising witness, on the expedited schedule herein ordered, eliminates any need for continuance of trial.[13] This comports with the factors favoring expeditious resolution of litigation, and the court's need to manage its docket. And the public policy favoring disposition of cases on the merits weighs strongly in favor of allowing plaintiffs to have, in addition to the false advertising witness herein identified,

---

[13] The court is mindful of the looming pretrial deadlines, including the October 22, 2013, pretrial disclosures deadline. Should the parties believe that some modest extension of any of the pretrial deadlines is necessary, they should request through the case manager within five days a scheduling conference by telephone with the court.

17

an industry witness so as to present evidence which is at the core of their case, with opportunity for defendants also to add an industry witness, if they so wish.

## CONCLUSION

For reasons given, defendants' motion to exclude, is GRANTED IN PART and DENIED IN PART, as follows:

1. All of the false advertising witnesses save Brad Lund are excluded, and plaintiffs must produce Mr. Lund for deposition at their expense no later than November 5, 2013. Documentation concerning Mr. Lund must be produced to defendants at least five business days prior to his deposition;

2. Plaintiffs are permitted to call one new industry witness, who they shall identify by October 17, 2013, and produce this witness for deposition at their expense in Raleigh, on November 4, or 5, 2013. Plaintiffs also must produce documentation concerning this witness at least five days prior to the witness's deposition;

3. Defendants are permitted to name their own non-expert industry witness by October 17, 2013, and the must produce this witness to plaintiffs for deposition on or before November 5, 2013,. Defendants also must produce documentation concerning this witness at least five days prior to the witness's deposition;

4. The parties shall confer through counsel as soon as possible, and not later than seven days from this date, to identify the documentation to be provided as herein ordered, before any deposition;[14] and

---

[14] Defendants have requested all documents relating to the witness's relationship with plaintiffs, and all communications between the witnesses and plaintiffs. The court leaves it to the parties to endeavor to reach agreement on what discovery documentation reasonably is required. If there is an issue here that cannot be resolved as between the sides, they are to

18

5. Where trial is set to commence December 3, 2013, should the parties believe that some modest extension of any of the pretrial deadlines is necessary, they should confer and request through the case manager within five days from this date a scheduling conference by telephone with the court.

SO ORDERED, this the 10th day of October, 2013

LOUISE W. FLANAGAN
United States District Judge

bring this immediately to the court's attention, and well in advance of any deposition, through request of the case manager for a conference by telephone.

19