THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:08-CV-403-FL

| | | |
|---|---|---|
| SMD SOFTWARE, INC., a North Carolina corporation; and SITELINK SOFTWARE, LLC, a North Carolina limited liability company, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| EMOVE, INC., a Nevada corporation; and WEB TEAM ASSOCIATES, a Nevada corporation, | ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on plaintiffs' motion for reconsideration of this court's ruling excluding references by their expert, Dr. Didow, to potentially applicable legal standards (DE 402). Defendants have responded and the matter is ripe for ruling. For reasons given below, plaintiffs' motion is DENIED. Where, however, there appears to be some confusion as to the scope of the court's order, the court takes this opportunity to clarify its ruling.

**COURT'S DISCUSSION**

A.  Standard of Review

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. . . . Motions to reconsider are not proper where the motion merely asks the court to rethink what the Court had already thought through rightly or wrongly." DIRECTV, INC. v. Hart, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004). A motion to reconsider is

appropriate where

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983); see also Federal Deposit Ins. Corp. v. Willetts, 882 F.Supp.2d 859, 867 (E.D.N.C. 2012) (motions to reconsider are limited to the purpose of allowing the court to "correct manifest errors of law or fact or to consider newly discovered evidence," and not to simply ask the court to re-evaluate its decision).

B.      Analysis

In this case, plaintiffs seek reconsideration of the court's ruling that Dr. Didow may not discuss applicable legal standards. Plaintiffs understood the court to rule that Dr. Didow was precluded from referring to the Lanham Act altogether. The court did not so rule, and clarifies its ruling below.

As noted by the court in its original order, the Fourth Circuit has instructed that "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." United States v. McIver, 470 F.3d 550, 561-62 (4th Cir. 2006). Stated another way, "opinions which would merely tell the jury what result to reach" are inadmissible. Fed. R. Evid. 704 advisory committee note. The Fourth Circuit has expounded further, stating:

> Federal Rule of Evidence 702 permits an expert to give opinions on scientific matters, technical matters, or matters involving other specialized knowledge so long as the testimony "*will assist the trier of fact* to understand the evidence or to determine a fact in issue" (emphasis added). The touchstone of the rule is whether the testimony will assist the jury. Focusing on that criterion, we have held that it does not help the jury for an expert to give testimony that "states a legal standard or draws

2

> a legal conclusion by applying law to the facts," *McIver,* 470 F.3d at 562, because it "supplies the jury with no information other than the witness's view of how the verdict should read," *Weinstein's Federal Evidence* § 704.04[2][a] (2d ed.2003). Determining when legal conclusions would be helpful to the jury must also take into account the role that the judge has in instructing the jury on the law. We have noted, for example, that when a witness gives an opinion about the meaning of a specialized legal term, the witness is giving a legal conclusion that is better handled by the judge and, coming from the witness, will be of little assistance to the jury.

United States v. Offill, 666 F.3d 168, 175 (4th Cir. 2011). "Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination." United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002). "However, the line is not always clear between impermissible testimony about what the law is and permissible expert testimony about standard industry practice." Ji v. Bose Corp., 538 F. Supp. 2d 354, 359 (D. Mass. 2008).

Although the court enjoys broad discretion when determining the admissibility of expert testimony, "the court must balance this discretion with the concerns of Rule 403 to ensure that the probative value of the proffered testimony is not 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Bouygues Telecom, S.A. v. Tekelec, 472 F. Supp. 2d 722, 725 (E.D.N.C. 2007) (quoting Fed.R.Evid. 403).

In this case, the court held that Dr. Didow would not be allowed to testify as to potentially applicable legal standards, such as a method of calculating damages under the Lanham Act that has been used in another circuit, or a statement that the Marketing Research Association warns that "cases of comparative advertising that explicitly mention the competitor often result in a presumption of irreparable injury." See Didow August 19, 2013, Report, at 15, 20 (DE 321-2). The court does not find good cause in law to reconsider this ruling.

In the instant motion, however, plaintiffs assert that the court improperly ruled that Dr. Didow "may never refer to the law in expressing an opinion." Pls.' Mem. Supp. Mot. to Reconsider,

3

at 5. The court did not so rule. See Specht v. Jensen, 853 F.2d 805, 809 (10th Cir. 1988) ("We recognize that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible."). Rather, the court held that insofar as Dr. Didow would opine as to applicable legal standards, and as to certain specific holdings or summaries of holdings by other courts, such statements were inadmissible where they were either unhelpful to the jury, or inadmissible under Rule 403 where they posed a threat of confusing the jury as to the relevant standards.

Plaintiffs inform that Dr. Didow's anticipated testimony regarding the Lanham Act consists of the following:

1. The basic obligations of advertisers when choosing to engage in comparative advertising, explaining the industry standard as informed by FTC regulations, the American Association of Advertising Agencies' guidelines and the Marketing Research Association's guidelines;

2. The purposes behind these industry standards;

3. The existence of the Lanham Act and how it influences these industry standards, *including the potential application of a presumption of injury to a competitor who is specifically mentioned in comparative advertising*; and

4. The general advice within the industry on how to avoid liability, including that compliance with certain affirmative steps is recommended in order to avoid liability for false advertising.

Pls.' Mem. Supp. Mot. to Reconsider, at 8 (emphasis added). The court's prior ruling did not preclude Dr. Didow from testifying as to industry standards relating to comparative advertising, the existence of the Lanham Act, or general industry advice on how to avoid liability. The court's prior ruling does, however, clearly preclude Dr. Didow from, among other things, testifying as to the law governing this case, which would include testimony that there is a potential for application of presumptions of injury under the Lanham Act in cases involving comparative advertising. With

4

respect to Dr. Didow's testimony regarding how the Lanham Act influences industry standards, Dr. Didow may not do so by stating what the legal standards under those portions of the Lanham Act at issue in this case are. See Specht, 853 F.2d at 810 ("In no instance can a witness be permitted to define the law of the case."). Thus, statements which Dr. Didow may make at trial as to how the Lanham Act influences industry standards will be scrutinized closely.

Defendants, opposing the instant motion, assert that Dr. Didow has, in his report, offered opinions as to the governing law in this case. Defendant cite to numerous publications attached to Dr. Didow's report. See, e.g., Didow August 19, 2013, Report, at 85 ("Cases of comparative advertising that explicitly mention the competitor often result in a presumption of irreparable injury. Under the Lanham Act, liability arises for an advertiser if the commercial message or statement is either literally false or literally true or ambiguous, but has the tendency to deceive consumers because of an implied message."). Where plaintiffs have only sought reconsideration of the court's ruling made with respect to Dr. Didow's testimony, the court does not address the admissibility of various publications appended to Dr. Didow's report in this order. Upon review of these publications, however, the court understands defendants' concern, and re-iterates here that Dr. Didow is precluded from offering testimony as to the proper legal standards governing this case. See Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207, 1213 (D.C.Cir.1997) ("Each courtroom comes equipped with a 'legal expert,' called as judge, and it is his or her province alone to instruct the jury on the relevant legal standards."). Insofar as defendants seek to have the court rule at this time that Dr. Didow may not testify as to industry standards regarding claim substantiation, the court declines now so to do. Defendants may, however raise timely objections to such testimony at trial.

5

## CONCLUSION

Based upon the foregoing, plaintiffs' motion to reconsider (DE 402) is DENIED. Nevertheless, as set forth above, the court's order precluding Dr. Didow from testifying as to potentially applicable legal standards – such as various presumptions under the Lanham Act – does not prohibit him from referencing the Lanham Act at all or from testifying as to industry standards for claim substantiation.

SO ORDERED this the 7th day of May, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge